```
           IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|  |  |
|---|---|
| WRIST WORLDWIDE TRADING GMBH, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-10-1369 |
| M/V AUTO ATLAS, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Wrist Worldwide Trading GmbH ("Wrist") asserted a lien on the *M/V Auto Atlas*, owned by STX Pan Ocean Co. Ltd. ("STX"), under the Commercial Instruments and Maritime Lien Act.[1] For the following reasons, Wrist's motion for partial summary judgment will be granted.

I. Background[2]

The *Auto Atlas* is a ship owned by STX. Compl. ¶ 3. On December 15, 2008, STX entered into a charter party with Litan International S.A. ("Litan"). ECF No. 14, Ex. 4 at 1 [hereinafter Charter Party]. The charter party (1) noted that Litan

---

[1] 46 U.S.C. § 31301 *et seq*.

[2] In reviewing the motion for partial summary judgment, STX's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

was "owned and guaranteed by the Abu Rashed Group,"[3] and (2) was signed by "Abu Rashed." *Id.* at 1, 5. European Red Sea African Lines Ltd. ("ERSAL"), a liner service, is also part of the Abu Rashed Group.[4] Wrist, a German corporation, sells vessel fuel. Compl. ¶ 2; ECF No. 11 at 1.

On April 3 and 23, 2009, ERSAL ordered fuel from Wrist for the *Auto Atlas*.[5] The fuel[6] was delivered to Massachusetts (totaling $ 195,407.52) and West Africa (totaling $ 47,707.89), respectively. ECF No. 11, Exs. A, C; Compl., Ex. E. Wrist has not been paid. ECF No. 11 at 2.

On September 4, 2009, in a separate lawsuit, STX sued Litan, the Abu Rashed Group, ERSAL, and others in the Southern

---

[3] The Abu Rashed Group, founded in Germany, "manag[es] a group of companies," including shipping services. Abu Rashed Group, About the Group, http://www.aburashedgroup.com/index-1.html (last visited Dec. 21, 2010).

[4] Abu Rashed Group, Shipping & Logistics, http://www.aburashed group.com/index-5_b.html (last visited Dec. 21, 2010) (the Abu Rashed Group's website (1) announcing "ERSAL" as a new "liner service" making trips from the "East Coast . . . to West African Ports," and (2) listing "ERSAL Line Announcements and Reports"); *see also New Ro/Ro Service for Baltimore*, Am. Shipper, Aug. 29, 2008, *available at* http://www.americanshipper.com/SNW_story. asp?news=102788 ("ERSAL . . . is part of the . . . Abu Rashed Group.").

[5] ECF No. 11, Ex. A (confirmation order), Ex. B (receipt), Ex. C (invoices).

[6] Supplied by Global Companies, LLC. ECF No. 11, Ex. A.

District of New York for breach of contract.  ECF No. 18, Ex. 1 ¶ 1 [hereinafter STX SDNY Compl.].  STX alleged:

(1) "[The] Abu Rashed [Group and] ERSAL . . . are alter egos of . . . Litan because they . . . are actually carrying on the business and operations of Litan."  *Id.* ¶ 38.
(2) "Litan is a shell-corporation through which [the] Abu Rashed [Group and] ERSAL [transact] business."  *Id.* ¶ 39.
(3) "Litan has no separate, independent entity from . . . [the] Abu Rashed [Group or] ERSAL."  *Id.* ¶ 40.
(4) Business "among [Litan, the Abu Rashed Group, and ERSAL] is not conducted at arm's length and/or proper formalities are not observed by [them]."  *Id.* ¶ 41.
(5) "ERSAL [is] part of [the] Abu Rashed [Group]."  *Id.* ¶ 45.
(6) "Litan is severely undercapitalized."  *Id.* ¶ 46.
(7) Litan, the Abu Rashed Group, and ERSAL "should be considered as a single economic unit with no corporate distinction[,] rendering . . . all assets of [the] Abu Rashed [Group and] ERSAL susceptible to attachment and/or restraint for the debts of Litan."  *Id.* ¶ 58.

On May 28, 2010, Wrist filed a complaint in this Court seeking to arrest the *Auto Atlas* for failure to pay for the fuel delivered to Massachusetts (Count I) and West Africa (Count II).  Compl. ¶¶ 5–7.  On May 30, 2010, the *Auto Atlas* was arrested.  ECF No. 6; ECF No. 11 at 2.

On July 13, 2010, Wrist moved for summary judgment on Count I, asserting a lien on the *Auto Atlas* under the Commercial Instruments and Maritime Lien Act.  ECF No. 11 at 1.  On July 27, 2010, STX opposed that motion.  ECF No. 14.[7]  On August 13, 2010, Wrist filed its reply.  ECF No. 16.

---

[7] STX's motion for an extension of time to file a response, *see* ECF No. 13, will be denied as moot.

3

On August 23, 2010, Wrist filed a supplemental submission. ECF No. 18 & Ex. 1.[8] In August and September 2010, STX sent Wrist discovery requests. *See* ECF No. 22 at 7. On November 17, 2010, STX sent a letter to the Court requesting a stay of the proceedings until Wrist answered its discovery. ECF No. 20. On November 18, 2010, Wrist opposed that request. ECF No. 21. On November 22, 2010, STX filed its reply. ECF No. 22.

II. Analysis

  A. Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether

---

[8] It was accepted because it is "helpful in resolving the pending motion." *SEC v. Mohn*, No. 02-74634, 2005 WL 2179340, at *8 n.5 (E.D. Mich. Sept. 9, 2005) (permitting party's "supplemental submission").

  STX's SDNY Complaint, attached by Wrist as an exhibit, *see* ECF No. 18, Ex. 1, will also be considered. STX has not disputed its authenticity. *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1269 & n.8 (M.D. Fla. 2007) (considering "pleadings [from] previous cases [filed] as exhibits").

[9] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Wrist's Motion for Partial Summary Judgment

Wrist asserts that it has a lien on the *Auto Atlas* under the Commercial Instruments and Maritime Lien Act (the "Act")[10] because it has not been paid for the fuel ERSAL ordered to be delivered to Massachusetts. ECF No. 11 at 10; ECF No. 16 at 2-3, 9. STX asserts no lien exists because ERSAL was not authorized to order the fuel. ECF No. 14 at 4.

---

[10] 46 U.S.C. § 31301 *et seq*.

1. The Act

In admiralty law, necessaries--services "necessary to the vessel"--permit the vessel to "make [its] voyage." *Jan C. Uiterwyk Co., Inc. v. MV Mare Arabico*, 459 F. Supp. 1325, 1330 (D. Md. 1978). It is undisputed that the fuel ERSAL ordered from Wrist was a necessary.[11]

The Act was intended to "operate in aid of those who supply necessaries to ships." *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of Cal.*, 310 U.S. 268, 272-73 (1940). Thus, one who provides necessaries to a vessel on the "order of the owner or a person *authorized* by the owner" has "a maritime lien on the vessel," and "may bring a civil action *in rem* to enforce the lien." 46 U.S.C. § 31342 (emphasis added). The persons "presumed" authorized to order necessaries include: (1) one "entrusted with the management of the vessel"; and (2) an "officer or agent" appointed by the "charterer." 46 U.S.C. § 31341(a). It is a "fundamental tenet" that the charterer itself is also presumed authorized to order necessaries.[12]

---

[11] *See* ECF No. 11 at 2, 4; ECF No. 14 at 2-3; *see also Triton Marine Fuels, Ltd., S.A. v. M/V Pacific Chukotka*, 671 F. Supp. 2d 753, 761 (D. Md. 2009) ("Fuel is a necessary[.]").

[12] *Triton Marine Fuels, Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409, 414 (4th Cir. 2009) (citation and internal quotation marks omitted); *see also Ceres Marine Terminals, Inc. v. M/V Harmen Oldendorff*, 913 F. Supp. 919, 922 (D. Md. 1995) (the "charter and its agents" are presumed authorized to "procure necessaries" under the Act (*citing* 46 U.S.C. § 31341(a)(4)(B))).

2. Admiralty Courts May Consider a Charterer's Alter Ego
   Status

Because "an admiralty court can review questions of . . . alter ego" and "appl[y] federal common law,"[13] courts may hold that an entity is the charterer's alter ego.[14] In making this determination, courts consider, *inter alia*, "undercapitalization," "failure to observe corporate formalities," common ownership, and whether transactions are "at arm's length."[15]

3. ERSAL Is the Alter Ego of Litan, the Charterer

Wrist asserts that ERSAL was presumed authorized by STX--the *Auto Atlas*'s owner--to order the fuel because ERSAL was either the charterer or "entrusted with the [*Auto Atlas*'s] management." ECF No. 11 at 2, 7 (*citing* 46 U.S.C. § 31341(a)); ECF No. 16 at 3 (same). Wrist argues that even though STX entered into the charter party with Litan, (1) ERSAL and Litan

---

[13] *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174-76 (4th Cir. 1998) (examining whether a charterer and ship owner were alter egos to determine whether a third-party claimant was entitled to sale proceeds); *see also Cont'l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 816 (S.D.N.Y. 1987) (considering whether a cargo owner was the alter ego of the charterer for arbitration (citation and internal quotation marks omitted)).

[14] *See, e.g., Wajilam Exports (Sing.) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 284-85 (S.D.N.Y. 2006) (as the alter ego of the charterer, company's funds were properly attached).

[15] *Ost-West-Handel*, 160 F.3d at 174; *U.S. Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 828-29 (4th Cir. 1992); *Wajilam*, 475 F. Supp. 2d at 284-85.

7

are parts of the Abu Rashed Group, and (2) STX admitted in its SDNY Complaint that Litan "has no separate, independent identity from . . . [the] Abu Rashed [Group or] ERSAL." ECF No. 16 at 7; ECF No. 18 at 2 (*citing* STX SDNY Compl. ¶ 40).

STX argues that ERSAL was not authorized to order the fuel because Litan, not ERSAL, was the charterer. ECF No. 14 at 4–5; ECF No. 22 at 2; Jeon Decl. ¶¶ 5–6. Without elaboration, STX asserts that its SDNY Complaint: (1) is from an "unrelated matter seeking security against" Litan in an "arbitration proceeding in London to recover unpaid charter hire"; and (2) does not "undermine its denial of ERSAL's status as time charterer." ECF No. 22 at 3. STX requests that the case be stayed until Wrist responds to its discovery requests, so that it can "determine the basis of the factual averments set forth by [Wrist]." ECF No. 20 (Nov. 17, 2010 letter to the Court); *see also* ECF No. 22 at 5.

There is no genuine dispute that ERSAL is the alter ego of Litan, the charterer. *See* Fed. R. Civ. P. 56(a). STX alleged in its SDNY Complaint that ERSAL is the "alter ego[] of . . . Litan" because Litan (1) is "severely undercapitalized," and (2) failed to "observe proper formalities" or conduct business "at arm's length" with the Abu Rashed Group or ERSAL. STX SDNY

8

Compl. ¶¶ 38, 41, 46.[16] STX has also alleged that Litan, the Abu Rashed Group, and ERSAL "should be considered as a single economic unit with no corporate distinction." *Id.* ¶ 58.[17] STX has neither denied its allegations that ERSAL is Litan's alter ego, nor moved to strike the SDNY Complaint exhibit.[18]

ERSAL and Litan are also parts of the Abu Rashed Group[19]: (1) the STX-Litan charter party, signed by "Abu Rashed," notes that Litan is "owned and guaranteed by [the] Abu Rashed Group," Charter Party 1, 5; (2) the Abu Rashed Group's website indicates that it manages ERSAL;[20] and (3) STX alleged in its SDNY Com-

---

[16] *See Ost-West-Handel*, 160 F.3d at 174 ("undercapitalization" and "failure to observe corporate formalities" indicate "whether one entity constitutes the alter ego of another"); *Wajilam*, 475 F. Supp. 2d at 284-85 ("transactions not at arm's length" are relevant to determining alter ego status).

[17] *See Anagel*, 658 F. Supp. at 816 (party had to assert that "[the charterer] had no separate mind, will, or existence of its own" before the court would be able to find that the charterer's alter ego was the cargo owner (citation and internal quotation marks omitted)).

[18] *See* ECF No. 20; ECF No. 22 at 3 (explaining only that its SDNY Complaint is from "an unrelated matter seeking security against" Litan in an "arbitration proceeding").

[19] *See U.S. Fire Ins. Co.*, 966 F.2d at 828-29 (common ownership is a factor in an alter ego analysis).

[20] Abu Rashed Group, Shipping & Logistics, http://www.aburashedgroup.com/index-5_b.html (last visited Dec. 21, 2010) (listing ERSAL as a new liner service); *see also New Ro/Ro Service for Baltimore*, *supra* ("ERSAL . . . is part of the . . . Abu Rashed Group.").

9

plaint that "ERSAL [is] part of [the] Abu Rashed [Group]," STX SDNY Compl. ¶ 45.

Further, although the Abu Rashed Group-Litan-ERSAL relationship may have been unclear in the charter party, Wrist--the supplier--was not required to "resolve ambiguities which may [have] be[en] found in the charter agreement."[21] Such an obligation would have "thwarted" the purpose of the Act, which is to "aid . . . those who supply necessaries." *Marine Fuel Supply*, 869 F.2d at 479; *Signal Oil*, 310 U.S. at 272–73.

ERSAL is the alter ego of Litan, the charterer. As the charterer's alter ego, ERSAL was presumedly authorized by STX to order the fuel (a necessary) from Wrist.[22] Because Wrist provided that fuel on the "order" of ERSAL, Wrist has a lien against the *Auto Atlas* for the fuel delivered to Massachusetts, totaling $ 195,407.52 (Count I).[23]

---

[21] *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473, 478 (9th Cir. 1988) (refusing to burden the fuel supplier with the "onerous duty of resolving the ambiguities in the [bunker broker financer]-[subcharterer]-[managing agent]-[bunker broker] relationship" (*citing Signal Oil*, 310 U.S. at 280)).

[22] *See* 46 U.S.C. § 31341(a); *Ceres*, 913 F. Supp. at 922 (the Act presumes that the charterer is authorized to order necessaries (*citing* 46 U.S.C. § 31341(a)(4)(B))).

[23] *See* 46 U.S.C. § 31342 (one who provides necessaries on the "order of . . . a person authorized by the owner"--ERSAL, as the charterer's alter ego--has a maritime lien).

Although STX has requested a stay of the proceedings until Wrist answers its discovery requests, ECF No. 22 at 5, STX never filed a Rule 56(d) declaration or affidavit requesting more time for discovery, see Fed. R. Civ. P. 56(d).[24] The Fourth Circuit places "great weight on the Rule 56[(d) declaration or] affidavit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). STX "may not simply assert . . . that discovery was necessary . . . when it failed to comply with the requirements of Rule 56[(d)]." *Id.* Further, STX has not explained how discovery would help it "determine the basis of the factual averments set forth by [Wrist]," see ECF No. 20; STX filed the SDNY Complaint alleging that ERSAL is Litan's alter ego. *See* STX SDNY Compl. ¶¶ 38–41, 45–46, 58.

Accordingly, partial summary judgment must be granted to Wrist. Although the Court has "discretion to award pre-judgment interest [for a] lien" under the Act, *Triton*, 671 F. Supp. 2d at 764, it is unclear whether Wrist seeks such an award.[25] Within

---

[24] Rule 56(d), formerly Rule 56(f), allows a court to deny summary judgment or "allow time . . . to take discovery" if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see also id.* at advisory committee's note (Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)").

[25] Wrist first argued that it was entitled to damages (including pre-judgment interest), ECF No. 11 at 9–10, but apparently abandoned this assertion, *see* ECF No. 16 at 1 (moving for "partial summary judgment as to liability"); *id.* at 9 ("[S]ummary judg-

11

15 days from the date of the accompanying Order, Wrist shall (1) inform the Court whether it seeks pre-judgment interest, and, if so, (2) submit a proposed judgment that states the rate and amount of pre-judgment interest due.[26]

III. Conclusion

For the reasons stated above, Wrist's motion for partial summary judgment will be granted.[27]  Wrist will obtain a lien against the *Auto Atlas* in the amount of $ 195,407.52.

January 20, 2011                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge

---

ment as to liability for the fuel supplied in [Massachusetts] is warranted.").

[26] *Total Safety US, Inc. v. Con-Dive, LLC*, No. H-08-2782, 2009 WL 3673051, at *1–*2 (S.D. Tex. Nov. 4, 2009) (ordering a supplier of necessaries that had a maritime lien to follow these steps).

[27] As a hearing would not aid the decisional process, STX's "Request for Hearing" will be denied.  *See* ECF No. 17.