IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WRIST WORLDWIDE TRADING GMBH,

    Plaintiff,

    v.

M/V AUTO ATLAS, et al.

    Defendants.

CIVIL NO.: WDQ-10-1369

* * * * * * * * * * * * *

MEMORANDUM OPINION

On January 21, 2011, this Court granted a lien to Wrist Worldwide Trading GmbH ("Wrist") on the *M/V Auto Atlas* under the Commercial Instruments and Maritime Lien Act (the "Act").[1] For the following reasons, STX's motion for reconsideration will be denied.

I. Background

The *Auto Atlas* is a ship owned by STX Pan Ocean Co., Ltd. ("STX"). Compl. ¶ 3. On December 15, 2008, STX entered into a charter party with Litan International S.A. ("Litan"). ECF No. 14, Ex. 4 at 1 [hereinafter Charter Party]. The charter party noted that Litan was "owned and guaranteed by [the] Abu Rashed Group."[2] *Id.* at 1. European Red Sea African Lines Ltd. ("ERSAL"),

---

[1] 46 U.S.C. §§ 31301 *et seq.*

[2] The Abu Rashed Group, founded in Germany, "manag[es] a group of companies," including shipping services. Abu Rashed Group,

a liner service, is also part of the Abu Rashed Group.[3] Wrist, a German corporation, sells vessel fuel. Compl. ¶ 2; ECF No. 11 at 1.

On April 3 and 23, 2009, ERSAL ordered fuel from Wrist for the *Auto Atlas*.[4] The fuel was delivered to Massachusetts (totaling $ 195,407.52) and West Africa (totaling $ 47,707.89). ECF No. 11, Exs. A, C; Compl., Ex. E. Wrist has not been paid. ECF No. 11 at 2.

On September 4, 2009, in a separate lawsuit, STX filed a verified complaint against Litan, the Abu Rashed Group, ERSAL, and others in the Southern District of New York for breach of contract. ECF No. 18, Ex. 1 ¶ 1. STX alleged:

(1) "[The] Abu Rashed [Group and] ERSAL . . . are alter egos of . . . Litan because they . . . are actually carrying on the business and operations of Litan."

*Id.* ¶ 38.

---

About the Group, http://www.aburashedgroup.com/index-1.html (last visited June 29, 2011).

[3] Abu Rashed Group, Shipping & Logistics, http://www.aburashedgroup.com/index-5_b.html (last visited June 29, 2011) (the Abu Rashed Group's website (1) announcing "ERSAL" as a new "liner service" making trips from the "East Coast . . . to West African Ports," and (2) listing "ERSAL Line Announcements and Reports"); *see also New Ro/Ro Service for Baltimore*, Am. Shipper, Aug. 29, 2008, *available at* http://www.americanshipper.com/SNW_story.asp?news=102788 ("ERSAL [is] part of the . . . Abu Rashed Group.").

[4] ECF No. 11, Ex. A (confirmation order), Ex. B (receipt), Ex. C (invoices); Compl. ¶ 7.

(2) "Litan is a shell-corporation through which [the] Abu Rashed [Group and] ERSAL [transact] business."

*Id.* ¶ 39.

(3) "Litan has no separate, independent entity from . . . [the] Abu Rashed [Group or] ERSAL."

*Id.* ¶ 40.

(4) Business "among [Litan, the Abu Rashed Group, and ERSAL] is not conducted at arm's length and/or proper formalities are not observed by [them]."

*Id.* ¶ 41.

(5) "ERSAL [is] part of [the] Abu Rashed [Group]."

*Id.* ¶ 45.

(6) "Litan is severely undercapitalized."

*Id.* ¶ 46.

(7) Litan, the Abu Rashed Group, and ERSAL "should be considered as a single economic unit with no corporate distinction[,] rendering . . . all assets of [the] Abu Rashed [Group and] ERSAL susceptible to attachment and/or restraint for the debts of Litan."

*Id.* ¶ 58.

On January 19, 2010, STX voluntarily dismissed its SDNY complaint without prejudice because of "no appearance" by Litan, the Abu Rashed Group, or ERSAL. ECF No. 25, Ex. 1.

On May 28, 2010, Wrist filed a complaint in this Court seeking to arrest the *Auto Atlas* for failure to pay for the fuel delivered to Massachusetts (Count I) and West Africa (Count II). Compl. ¶¶ 5-7. On May 30, 2010, the *Auto Atlas* was arrested. ECF No. 6; ECF No. 11 at 2.

On July 13, 2010, Wrist moved for summary judgment on Count I, asserting a lien[5] on the *Auto Atlas* under the Act. ECF No. 11 at 1. Wrist argued that ERSAL was presumedly authorized by STX--the owner--to order the fuel because ERSAL was either the charterer or entrusted to manage the *Auto Atlas*. ECF No. 11 at 2, 7; ECF No. 16 at 7.

On July 27, 2010, STX opposed Wrist's motion for summary judgment. ECF No. 14. STX argued that the *Auto Atlas* was chartered to Litan only, and ERSAL was unauthorized to order the fuel. *Id.* at 2. On August 13, 2010, Wrist filed its reply. ECF No. 16.

On August 23, 2010, Wrist filed a "supplemental submission," which attached STX's SDNY complaint as an exhibit. ECF No. 18 & Ex. 1.[6] Wrist argued that the SDNY complaint--alleging that

---

[5] Under the statute, one who provides "necessaries" such as fuel on the "order of the owner or a person *authorized* by the owner" has a lien on the vessel and may sue to enforce it. 46 U.S.C. § 31342 (emphasis added). The persons "presumed" to be authorized by the owner to order necessaries include one "entrusted with the management" of the vessel, the charterer, and an officer or agent appointed by the charterer. 46 U.S.C. § 31341(a); *Triton Marine Fuels, Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409, 414 (4th Cir. 2009).

[6] The Court accepted both because they were "helpful in resolving the pending motion," and STX had not disputed the SDNY complaint's authenticity. Mem. Op. 4 n.8 (*citing, inter alia, SEC v. Mohn*, No. 02-74634, 2005 WL 2179340, at *8 n.5 (E.D. Mich. Sept. 9, 2005)).

4

Litan and ERSAL were alter egos[7]--supported its position that ERSAL was presumedly authorized to order the fuel. ECF No. 18 at 2.

On January 21, 2011, the Court granted summary judgment to Wrist on Count I, reasoning:

> ERSAL is the alter ego of Litan, the charterer. As the charterer's alter ego, ERSAL was presumedly authorized by STX to order the fuel (a necessary) from Wrist. Because Wrist provided that fuel on the "order" of ERSAL, Wrist has a lien against the *Auto Atlas* for the fuel delivered to Massachusetts, totaling $ 195,407.52 (Count I).

ECF No. 23 [hereinafter Mem. Op.] at 10; *see also* ECF No. 24 [hereinafter Partial Summary Judgment Order].

On January 31, 2011, STX moved for reconsideration of the Partial Summary Judgment Order. ECF No. 25. On February 15, 2011, Wrist opposed that motion. ECF No. 29. On March 2, 2011, STX filed its reply. ECF No. 30.

---

[7] In August and September 2010, STX sent Wrist discovery requests to "determine the basis of Wrist's new contentions contained in its . . . supplemental submission [about ERSAL being Litan's alter ego]." ECF No. 22 at 7. On November 17, 2010, STX sent a letter to the Court requesting a stay of the proceedings until Wrist had answered its discovery. ECF No. 20. On November 18, 2010, Wrist opposed that request. ECF No. 21. On November 22, 2010, STX filed its reply. ECF No. 22. Without elaboration, STX asserted that its SDNY complaint: (1) was from an "unrelated matter seeking security against" Litan in an "arbitration proceeding in London to recover unpaid charter hire"; and (2) did not "undermine its denial of ERSAL's status as time charterer." *Id.* at 3.

II. Analysis

A. Standard of Review

A party may move to alter or amend a judgment under Rule 59(e), or seek relief from a judgment or order under Rule 60(b). *See* Fed. R. Civ. P. 59(e), 60(b).[8] A "judgment" is "a decree and any order from which an appeal lies." *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) (internal quotation marks omitted) (*quoting* Fed. R. Civ. P. 54(a)). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992). Because the Partial Summary Judgment Order was a judgment and STX filed its motion for reconsideration within 28 days, Rule 59(e) governs it.

Under Rule 59(e), a court may grant a motion to alter or amend the judgment to: (1) accommodate an intervening change in controlling law; (2) account for new evidence previously unavailable; or (3) correct a clear error of law or prevent manifest injustice. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008) (citation and internal quotation

---

[8] Generally, interlocutory orders are subject to modification "prior to the entry of a final judgment adjudicating the claims to which they pertain." *Williams v. Cnty. of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999); Fed. R. Civ. P. 54(b).

marks omitted). Rule 59(e) may not be used to "relitigate old matters" or "raise arguments" that could have been made before judgment was entered. *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2617 n.5 (2008) (citation and internal quotation marks omitted); *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

Mere disagreement with the Court's decision does not justify granting a Rule 59(e) motion. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). Indeed, "[w]he[n] a motion does not raise new arguments, but merely urges the [C]ourt to 'change its mind,' relief is not authorized." *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 470 (D. Md. 2002); *see Erskine v. Bd. of Educ.*, 207 F. Supp. 2d 407, 408 (D. Md. 2002).

B. STX's Motion

STX argues that the Court granted partial summary judgment to Wrist based on the flawed finding that ERSAL and Litan are alter egos, and relied solely on STX's SDNY complaint that Wrist included in its supplemental submission. ECF No. 25 at 3. STX asserts "surprise" and "manifest injustice," arguing that it was never allowed to dispute the supplemental submission's alter ego theory. *Id.* at 4, 6-7. STX also argues that the Court mistakenly considered the SDNY allegations "admissions" that ERSAL and Litan are alter egos, even though parties may plead inconsistent

claims. *Id.* at 4.[9]

For the first time, STX asserts: (1) it voluntarily dismissed the SDNY complaint on January 19, 2010; and (2) in a footnote, "For the record, [STX] does indeed deny that ERSAL and Litan are alter egos[.]" ECF No. 25 at 6; *id.*, Ex. 1; ECF No. 30 at 8 n.3. STX requests that the Partial Summary Judgment Order be vacated because "[t]here remains a question of fact whether ERSAL was authorized by [STX] to order the fuel." ECF No. 25 at 8.

Wrist asserts that STX has failed to state a basis for reconsideration. ECF No. 29 at 2.[10]

Contrary to STX's assertions and as noted in the Partial Summary Judgment Memorandum Opinion, the Court did not find STX's SDNY complaint itself dispositive of whether ERSAL is Litan's alter ego.[11] As the Court explained, STX never *denied*

---

[9] *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

[10] Wrist also argues that even if ERSAL is not Litan's alter ego, ERSAL "held itself out" as the party entrusted to manage the vessel. ECF No. 29 at 4. STX denies this. ECF No. 30 at 9. Parties may not "relitigate old matters" under Rule 59(e). *Pac. Ins. Co.*, 148 F.3d at 403.

[11] It should be noted that, generally, "a pleading from a related action is admissible as an admission and is evidence of the facts asserted therein." *Trexlar v. Seaboard Sys. R.R., Inc.*, 641 F. Supp. 688, 689 (W.D.N.C. 1986) (allowing defendant to introduce allegations in plaintiff's verified complaint from a related case, even though the plaintiff had "later elected to dismiss that [related] action" (*citing Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115 (7th Cir. 1981)). The party need simply be

its SDNY allegations or moved to strike the exhibit. Mem. Op. 9. Further, aside from the SDNY complaint, the Court found support for the alter ego theory because ERSAL and Litan are part of the Abu Rashed Group: the charter party noted that the Abu Rashed Group owned and guaranteed Litan,[12] and the Abu Rashed Group's website and a press release indicated that it managed ERSAL.[13]

Although STX asserts that it was not given the chance to respond to the supplemental submission's alter ego theory, ECF No. 25 at 7, as will be discussed in this Part, it had at least two opportunities to do so, see ECF Nos. 20, 22. Nearly three months after Wrist's August 23, 2010 supplemental submission, STX contacted the Court and sought to stay the case so Wrist could answer its August and September 2010 discovery about the alter ego theory. ECF No. 20 (STX's Nov. 17, 2010 letter to the Court). STX noted only that the discovery was necessary to "determine the basis of the factual averments set forth by [Wrist]." *Id.* at 1.

---

given an opportunity to explain the admission. *Enquip*, 655 F.2d at 118.

[12] Mem. Op. 9 (*citing* Charter Party 5).

[13] Abu Rashed Group, Shipping & Logistics, http://www.aburashed group.com/index-5_b.html (last visited June 29, 2011) (listing ERSAL as a new liner service); *New Ro/Ro Service for Baltimore*, *supra* ("ERSAL [is] part of the . . . Abu Rashed Group."); *U.S. Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 828-29 (4th Cir. 1992) (common ownership is a factor in an alter ego analysis), *cited in* Mem. Op. 9 & n.19.

Wrist opposed the request to stay, ECF No. 21, to which STX replied, ECF No. 22. In its reply, STX merely noted that its SDNY complaint was from "an unrelated matter seeking security against" Litan in an "arbitration proceeding." *Id.* at 3. Instead of using its correspondence with the Court to deny the SDNY allegations, which may have indicated a genuine dispute of fact,[14] STX merely asked the Court to stay the case until Wrist answered its discovery. However, as the Court noted, STX never: (1) filed a Rule 56(d) declaration or affidavit requesting more time for discovery,[15] or (2) explained how discovery would help it determine the "factual averments set forth by [Wrist]," when STX had filed the SDNY complaint alleging that ERSAL is Litan's alter ego. Mem. Op. 11.

Only now, in moving for reconsideration, has STX informed the Court that it dismissed the SDNY complaint--without prejudice--on January 19, 2010, and denies that ERSAL and Litan are alter egos. ECF No. 25 at 6; *id.*, Ex. 1; ECF No. 30 at 8 n.3. This

---

[14] Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[15] The Fourth Circuit places "great weight on the Rule 56[(d) declaration or] affidavit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). As the Court explained, STX "'may not simply assert . . . that discovery was necessary . . . when it failed to comply with the requirements of Rule 56[(d)].'" Mem. Op. 11 (quoting *Evans*, 80 F.3d at 961).

is insufficient.[16]

Further, as the Court explained, to the extent that the Abu Rashed Group-Litan-ERSAL relationship was unclear in the charter party, it was not the obligation of Wrist, the fuel supplier, to resolve that ambiguity. Mem. Op. 10. ERSAL ordered the fuel from Wrist, and Wrist has not been paid. See ECF No. 11, Exs. A-C. Because of the "necessity for speed in provisioning a vessel," legislators who supported the Act's passage were concerned that fuel suppliers could not "ascertain the existence of a charter [or] perform an adequate credit check on the entity ordering the supplies." *Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743, 749 (5th Cir. 1985). Because the purpose of the Act is to "aid" entities such as Wrist who supply necessaries, the statute includes a "presumption in favor of granting liens to suppliers."[17] Its purpose is "thwarted" if courts compel suppliers to "resolve [charter party] ambiguities."[18]

---

[16] See Pac. Ins. Co., 148 F.3d at 403 (Rule 59(e) prohibits parties from raising arguments that could have been made before judgment).

[17] *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of Cal.*, 310 U.S. 268, 272-73 (1940), cited in Mem. Op. 10; *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473, 478 (9th Cir. 1988).

[18] *Marine Fuel*, 869 F.2d at 478 (refusing to burden the fuel supplier with the "onerous duty of resolving the ambiguities in the [bunker broker financer]-[subcharterer]-[managing agent]-[bunker broker] relationship" (citing *Signal Oil*, 310 U.S. at 280)), cited in Mem. Op. 10 n.21.

Thus, as the Partial Summary Judgment Order directed, Wrist has a lien against the *Auto Atlas* for $ 195,407.52. STX's motion for reconsideration will be denied.

III. Conclusion

For the reasons stated above, STX's motion for reconsideration will be denied.

| | |
|---|---|
| ___6/30/11___<br>Date | ___/s/___<br>William D. Quarles, Jr.<br>United States District Judge |